# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

v.                                                                        **CRIMINAL NO. 1:22-cr-161-TBM-RPM**

**DONALD GRIFFIN**

## ORDER

This matter came before the Court on Defendant Donald Griffin's Motion to Suppress [30]. At the hearing conducted on September 7, 2023, the Court, having considered the pleadings, the record, the oral arguments of counsel, and the relevant legal authority, announced on the record its detailed findings and conclusions. The Court denied Griffin's Motion to Suppress [30].

Below is a brief summary of the Court's reasoning. It *does not include* the longer and more particularized findings and conclusions articulated from the bench.

To begin, Griffin first argued that the traffic stop initiated by Deputy Macko was not supported by probable cause. At the hearing, Deputy Macko testified that Griffin was traveling about 70 miles per hour and following too close to an eighteen-wheeler, as there were two car lengths or less between Griffin's vehicle and the eighteen-wheeler. The dashcam video did not dispute this testimony. Also, Deputy Macko testified that the appropriate space at that speed should have been six to seven car lengths. As a result, the Court finds that the traffic stop was supported by probable cause.[1]

---

[1] *See* MISS. CODE ANN. § 63-3-619 ("The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway").

Secondly, Griffin argued that the stop was unconstitutionally prolonged, and that his detention was not valid. But Deputy Macko testified to eight reasons that, when taken in their totality, gave way to Deputy Macko having reasonable suspicion leading to the call of the K9 unit. This K9 unit alerted to the finding of 22 kilos of cocaine in the vehicle.[2] The Court noted that of these eight reasons - each on their own or even some of them collectively - may not have given rise to reasonable suspicion. But when considering all eight in their totality,[3] they collectively gave Deputy Macko reasonable suspicion that other criminal activity may be afoot.[4] Those eight reasons are as follows:

(1) Griffin apologized when the Deputy approached the vehicle.

---

[2] *See United States v. Henry*, 37 F.4th 173, 176 (5th Cir. 2022) (holding that "[a] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges"); *U.S. v. Pack*, 612 F.3d 341, 357-58 (5th Cir. 2010) (holding that "we do not find that a detention during a valid traffic stop violates the detainees' Fourth Amendment rights where it exceeds the amount of time needed to investigate the traffic infraction that initially caused the stop, so long as (1) the facts that emerge during the police officer's investigation of the original offense create reasonable suspicion that additional criminal activity warranting additional present investigation is afoot, (2) the length of the entire detention is reasonable in light of the suspicious facts, and (3) the scope of the additional investigation is reasonable in light of the suspicious facts, meaning that it is reasonable to believe that each crime investigated, if established, would likely explain the suspicious facts that gave rise to the reasonable suspicion of criminal activity"); *United States v. Smith*, 952 F.3d 642, 648 (5th Cir. 2020) (finding that if an officer develops reasonable suspicion of additional criminal activity during his investigation of circumstances that originally caused the traffic stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion).

[3] *United States v. Gonzalez*, 328 F.3d 755 (5th Cir. 2003) (finding there were several articulable facts that supported reasonable suspicion of drug activity including: when the defendant "appeared very nervous, was hesitant in answering the most basic questions about his travel plans, lied about why he didn't have a driver's license, was 500 miles away from the road leading to his claimed destination, was on a road associated with drug trafficking, and had been arrested for drug trafficking in the past").

[4] *United States v. Smith*, 952 F.3d 642, 648 (5th Cir. 2020) (finding that reasonable suspicion requires examining "the totality of the circumstances and the collective knowledge and experience of the officer."); *United States v. Orsolini*, 300 F.3d 724 (6th Cir. 2002) (holding that in taking the circumstances of the stop in their totality, the officers had a supported reasonable suspicion and that the hour-long traffic stop was not unreasonable in order to conduct the dog sniff).

(2) Griffin was informed that he would only be receiving a warning, but Griffin's visible nervousness did not subside.[5]

(3) Griffin informed the deputy that he was traveling from Houston to Atlanta, which is a known drug trafficking route.[6]

(4) When the Deputy inquired about the ownership of vehicle, Griffin showed the Deputy two separate rental agreements and the timing between the return of the vehicle and Griffin's rental was only an 8-minute difference.[7] Also, the rental agreement with Griffin's name on it showed that Griffin's time period for renting the vehicle had expired.

(5) When asked to exit the vehicle, Griffin requested to be frisked by the Deputy.

(6) The Deputy asked Griffin about his travel plans. Griffin told the Deputy that he was an event planner and was traveling to Atlanta to develop business with celebrities. However, despite paying money to rent a vehicle, Griffin had no plans to meet anyone in particular and had no timeline for how long the trip would last.[8]

---

[5] *United States v. Bams*, 858 F.3d 937, 944 (5th Cir. 2017) (finding that a person's visible nervousness at a traffic stop may contribute to an officer's reasonable suspicion).

[6] *United States v. Reyes*, 963 F.3d 482, 489 (5th Cir. 2020) (finding that the officer had reasonable suspicion because during a traffic stop for speeding, the defendant claimed that she was trying to get her kids to school in Abilene, Texas, even though there weren't any kids in the car, and other parts of her story were "inconsistent and implausible," and that she was driving on I-20 from Dallas/Fort Worth, which is a known drug-trafficking corridor).

[7] *United States v. Miller*, No. 21-30432, 2022 WL 1517030, at *1 (5th Cir. May 13, 2022), *cert. denied*, 143 S. Ct. 325, 214 L. Ed. 2d 145 (2022) (holding that reasonable suspicion arose when the defendant could not answer who the owner of the car was that the defendant was driving, there were fresh smudges on the back of the car, and there was an odd timeline of the travel of the defendant).

[8] *United States v. Khanalizadeh*, 493 F.3d 479, 483 (5th Cir. 2007) (holding that the officer, who made a valid traffic stop of defendant's vehicle because it was missing a front license plate, had reasonable suspicion to continue his questioning of defendant, given the discrepancies in defendant's story).

(7) The Deputy invited Griffin to join him in the patrol car while the written warning form was filled out. Griffin obliged. Once in the patrol car, Griffin nervously bounced his leg repeatedly.[9]

(8) While sitting in the passenger seat of the patrol vehicle, Griffin briefly fell asleep at least twice in the middle of conversations with the Deputy. Also, Griffin's leg was bouncing when he was asleep.

Lastly, the Court turned to the timeline of the stop, noting that the entirety of the stop was a total of twenty-two minutes long, including the K9 drug sniff.[10] The eight reasons that gave rise to Deputy Macko's reasonable suspicion all occurred before or during the writing of the warning to Griffin and within a few minutes of the Deputy initiating the traffic stop.[11] Also, all eight reasons occurred before the criminal background check was returned to Deputy Macko. Similarly, the criminal background check was not complete before the K9 completed the drug sniff.[12] Therefore,

---

[9] *United States v. Williams*, 784 F. App'x 876, 882 (5th Cir. 2019) (holding that "[w]e have repeatedly ruled that signs of nervousness and inconsistent or implausible answers to questions can support reasonable suspicion"); *United States v. Fajardo-Guevara*, 507 F. App'x 365, 366 (5th Cir. 2013) (finding that reasonable suspicion arose, in part, because Fajardo's hands were constantly shaking, Fajardo's carotid artery was visibly pulsating, and Fajardo tried to hide her shaking hands behind her back).

[10] *United States. v. Ruiz*, 785 F3d 1134, 1143-44 (7th Cir. 2015) (holding that "a reasonable delay attributable to arranging for a canine unit to conduct a sniff may permissibly extend the duration of a stop").

[11] *United States v. Lewis*, 920 F.3d 483 (7th Cir. 2019) (finding that the court did not err in determining the duration of the stop (from its start to the moment the officer handed the defendant the warning was not prolonged past the time reasonably required to complete the mission of issuing a warning because the officer only spent 6 minutes and 15 seconds asking questions about travel matters and explaining how a canine unit will arrive. The court held that questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention).

[12] *U.S. v. Andres*, 703 F.3d 828 (5th Cir. 2013) (holding that the officer's continued search and seizure beyond the scope of the initial traffic stop was justified by additional reasonable suspicion based on the following: the defendant gave untruthful answers to the officers, had intense nervousness, the officers received an anonymous tip stating that the truck was carrying drugs, and other factors.); *United States v. Bueno*, 703 F.3d 1053 (7th Cir.), *cert. granted*, judgment vacated sub nom. *Gonzalez-Zavala v. United States*, 570 U.S. 901, 133 S. Ct. 2830, 186 L. Ed. 2d 881 (2013) (holding prolongation of a traffic stop based on probable cause due to further questioning by a police officer is

the Court finds that the traffic stop was not unreasonably prolonged and Deputy Macko's subsequent actions were supported by reasonable suspicion.[13]

IT IS THEREFORE ORDERED AND ADJUDGED that, for the reasons stated on the record at the hearing held on September 7, 2023, Donald Griffin's Motion to Suppress [30] is DENIED.

THIS, the 13th day of September, 2023.

						TAYLOR B. McNEEL
						UNITED STATES DISTRICT JUDGE

---

reasonable so long as the officer asks questions that hold potential for detecting crime, yet create little or no inconvenience).

[13] *Smith*, 952 F.3d at 650 (finding that an officer's ten-minute delay in having his K-9 unit conduct a drug sniff of a vehicle during a traffic stop was not unreasonable, where, during that ten-minute interval, the officer was waiting for in-depth background checks on all three men in the vehicle).